**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MICHIGAN ASS'N OF PUBLIC SCHOOL ACADEMIES, et al. | ) ) ) | Civil Action No. 1:22-cv-00712 |
| Plaintiffs | ) ) | Hon. Paul L. Maloney |
| v. | ) ) | U.S. District Court Judge |
| U.S. DEPARTMENT OF EDUCATION, et al. | ) ) ) | Hon. Sally J. Berens |
| Defendants | ) | U.S. Magistrate Judge |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................... 1

BACKGROUND ....................................................................................................... 2

    I.    Statutory and regulatory background..................................................... 2

    II.    The July 6, 2022, priorities, requirements, definitions, and selection criteria........ 4

    III.    Background of this case ..................................................................... 6

ARGUMENT ............................................................................................................ 8

    I.    Standards applicable to a motion to dismiss .......................................... 8

    II.    The plaintiffs cannot establish standing because no plaintiff has alleged a concrete plan to apply for a grant in a competition in which the Department will apply the July 2022 rules. ................................................................................ 9

        A.    The jurisdictional requirement of standing ................................ 9

        B.    Plaintiffs MAPSA, DCSN, and NCCCS cannot establish standing to sue on behalf of their members because none of them has identified a member that intends to apply for a CSP grant. ....................................... 10

        C.    The plaintiffs cannot establish standing based on their general interest in charter school advocacy or supposed injuries to persons other than themselves or their members. .................................. 14

        D.    Analyzing the plaintiffs' claims separately with respect to each of the three grant programs makes it even clearer that the plaintiffs cannot establish standing. .................................................................. 15

        E.    The plaintiffs cannot establish standing because it is uncertain how, or even whether, the Department will implement the challenged rules in particular future grant competitions............................................ 17

CONCLUSION.......................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*,
    468 U.S. 737 (1984)............................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................... 8

*Ass'n of Am. Physicians & Surgeons v. U.S. FDA*,
    13 F.4th 531 (6th Cir. 2021)................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................... 8

*Broom v. Shoop*,
    963 F.3d 500 (6th Cir. 2020)............................................................... 13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................. 1, 13, 18

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)............................................................................... 9

*Davis v. Colerain Twp.*,
    5 F.4th 164 (6th Cir. 2022)................................................................. 15

*Fednav, Ltd. v. Chester*,
    547 F.3d 607 (6th Cir. 2008)............................................................... 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................................... 9

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013)............................................................................. 15

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)............................................................................. 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)............................................................................... 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................. 14

*Rote v. Zel Custom Mfg. LLC*,
    816 F.3d 386 (6th Cir. 2016)............................................................... 8

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ........................................................................... 14

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ............................................................................. 9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................... 9

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..................................................................... passim

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ...................................................................... 8, 13

*Tenn. Republican Party v. SEC*,
    863 F.3d 507 (6th Cir. 2017) ........................................................... 12

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020) ..................................................................... 15

*Tileston v. Ullman*,
    318 U.S. 44 (1943) (per curiam) ...................................................... 14

*Trump v. New York*,
    141 S. Ct. 530 (2020) .................................................................. 13, 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................. 9

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018) ......................................................11, 12

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III ........................................................................... 1, 18

## FEDERAL STATUTES

20 U.S.C. § 1221e-3 ................................................................................. 4

20 U.S.C. § 3474 ...................................................................................... 4

20 U.S.C. §§ 7221–7221j ......................................................................... 4

    20 U.S.C. § 7221 ............................................................................... 3

    20 U.S.C. § 7221b ............................................................................. 3

20 U.S.C. § 7221b(a) ................................................................ 16

20 U.S.C. § 7221b(b) ................................................................ 4

20 U.S.C. § 7221d(a)(2) ................................................. 3, 4, 12, 16

20 U.S.C. § 7221d(b) ................................................................ 4

20 U.S.C. § 7221d(b)(1) ............................................................ 4

20 U.S.C. § 7221i(1) ............................................................ 7, 14

20 U.S.C. § 7221i(3) ......................................................... 4, 6, 16

20 U.S.C. § 7221i(5) ............................................................ 3, 6

20 U.S.C. § 7221i(6) ................................................................ 3

Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 ............................ 7

Elementary and Secondary Education Act of 1965, Pub. L. No. 89-10, 79 Stat. 27 ......... 2

Every Student Succeeds Act, Pub. L. No. 114-95, 129 Stat. 1802 (2015) ...................... 2

## FEDERAL REGULATIONS

34 C.F.R. § 75.105(b) ............................................................. 17

34 C.F.R. § 75.105(c) .............................................................. 5

34 C.F.R. § 75.105(c)(1) .......................................................... 18

34 C.F.R. § 75.200(b)(3) .......................................................... 17

34 C.F.R. § 75.201 ................................................................. 6

34 C.F.R. § 75.201(b) ............................................................. 18

34 C.F.R. § 75.201(c) ............................................................. 18

## OTHER AUTHORITIES

87 Fed. Reg. 14,197 (Mar. 14, 2022) .............................................. 4

87 Fed. Reg. 21,644 (Apr. 12, 2022) .............................................. 4

87 Fed. Reg. 40,406 (July 6, 2022) .......................................... passim

Dep't of Educ., Awards ........................................................ 12, 16

## PRELIMINARY STATEMENT

The plaintiffs in this action seek to challenge rules adopted by the Department of Education ("Department") in July 2022 establishing priorities, requirements, and selection criteria for federal grants under three programs that are part of the Department's Expanding Opportunity Through Quality Charter Schools Program (CSP). But the plaintiffs do not meet the jurisdictional requirement of standing, because they have not identified any concrete application of the July 2022 rules that threatens any imminent harm to their interests. The case should be dismissed for lack of subject matter jurisdiction.

None of the plaintiffs alleges the kind of "imminent and concrete" injury, *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009), that is needed to establish standing under Article III of the Constitution. None of the plaintiffs has alleged that it intends to apply for grants under the programs affected by the July 2022 rules. Three of the plaintiffs allege that some of their members intend to apply for CSP grants, but that is not sufficient to establish standing, because the plaintiffs do not specifically name the individual member or members that intend to apply for grants. The plaintiffs also cannot establish standing based on supposed injuries to persons other than their members.

Moreover, the July 2022 notice does not require the Department of Education to apply the new priorities, requirements, and selection criteria in any future grant competition. Rather, the Department will decide whether and how the new priorities, application requirements, and selection criteria will be implemented at the time of each new grant competition. Because the rules may not ever be implemented in a way that affects the plaintiffs' interests, the plaintiffs cannot show that any injury from the rules is "certainly impending" as required to establish standing, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Because none of the plaintiffs can establish standing, the Court should dismiss this action.

## BACKGROUND

### I.    Statutory and regulatory background

The Expanding Opportunity Through Quality Charter Schools Program (CSP), established by the Elementary and Secondary Education Act of 1965, Pub. L. No. 89-10, 79 Stat. 27, as amended by the Every Student Succeeds Act, Pub. L. No. 114-95, tit. IV, pt. C, 129 Stat. 1802 (2015) (codified as amended at 20 U.S.C. §§ 7221–7221j), authorizes six discretionary federal grant programs to support and improve the quality of public charter schools.

Congress charged the Secretary of Education with implementing the CSP and its grant programs to further eight key goals defined in the statute:

(1) improve the United States education system and education opportunities for all people in the United States by supporting innovation in public education in public school settings that prepare students to compete and contribute to the global economy and a stronger Nation;

(2) provide financial assistance for the planning, program design, and initial implementation of charter schools;

(3) increase the number of high-quality charter schools available to students across the United States;

(4) evaluate the impact of charter schools on student achievement, families, and communities, and share best practices between charter schools and other public schools;

(5) encourage States to provide support to charter schools for facilities financing in an amount more nearly commensurate to the amount States typically provide for traditional public schools;

(6) expand opportunities for children with disabilities, English learners, and other traditionally underserved students to attend charter schools and meet the challenging State academic standards;

(7) support efforts to strengthen the charter school authorizing process to improve performance management, including transparency, oversight and monitoring (including financial audits), and evaluation of such schools; and

(8) support quality, accountability, and transparency in the operational performance of all authorized public chartering agencies, including State educational agencies, local educational agencies, and other authorizing entities.

20 U.S.C. § 7221.

The plaintiffs challenge policies applicable to three of the six CSP grant programs. The first program is Grants to State Entities, or "State Entity Grants," authorized under 20 U.S.C. § 7221b. This program awards competitive grants to "State entities," that is, State educational agencies, State charter school boards, State governors, or charter school support organizations. *Id.* § 7221b(a). State entity grantees in turn award subgrants for the purpose of opening and preparing for the operation of new charter schools, replicating high-quality charter schools, and expanding high-quality charter schools. "Eligible applicants" for these subgrants are "charter school developers," that is, individuals or groups that are seeking to operate charter schools, that have applied to authorized public chartering agencies to operate charter schools and have provided adequate and timely notice to the agencies. *Id.* § 7221i(5)–(6). State entity grantees also may use grant funds to provide technical assistance to eligible applicants and authorized public chartering agencies and to work with authorized public chartering agencies in the State to improve authorizing quality, including developing capacity for, and conducting, fiscal oversight and auditing of charter schools. State entities may also use up to 3 percent of grant funds for administration. *See* 87 Fed. Reg. 40,406, 40406–07 (July 6, 2022).

The second program affected by the challenged rules is Grants to Charter School Developers for the Opening of New Charter Schools and for the Replication and Expansion of High-Quality Charter Schools, or "Developer Grants," authorized under 20 U.S.C. § 7221d(a)(2). Under this program, the Department provides competitive grants directly to charter school developers in States where there are no active State Entity Grants. Each grant is for the purpose of opening and preparing for the operation of a new charter school or replicated

high-quality charter school or expanding a high-quality charter school. *See* 87 Fed. Reg. at 40,407.

The third program affected by the challenged rules is Grants to Charter Management Organizations for the Replication and Expansion of High-Quality Charter Schools, or "CMO Grants," authorized under 20 U.S.C. § 7221d(b). This program provides competitive grants to charter management organizations to enable them to replicate or expand one or more high-quality charter schools. 87 Fed. Reg. at 40,407. A charter management organization is "a nonprofit organization that operates or manages a network of charter schools linked by centralized support, operations, and oversight." 20 U.S.C. § 7221i(3).

Congress expressly charged the Secretary with implementing these three grant programs. *See, e.g.*, *id.* §§ 7221b(b), 7221d(a)(2), (b)(1). In addition, Congress has conferred general authority on the Secretary to make rules and regulations governing programs administered by the Department. *See id.* §§ 1221e-3, 3474.

## II.    The July 6, 2022, priorities, requirements, definitions, and selection criteria

In March 2022, the Department published a notice in the Federal Register seeking comment on proposed priorities, requirements, definitions, and selection criteria for the three CSP programs discussed above—State Entity Grants, Developer Grants, and CMO Grants. 87 Fed. Reg. 14,197 (Mar. 14, 2022). The notice called for comments within 30 days. *See id.* at 14,197. The Department later published a notice announcing that it was permitting an additional 5 days for public comment. 87 Fed. Reg. 21,644 (Apr. 12, 2022).

In July 2022, the Department published a notice adopting final priorities, requirements, definitions, and selection criteria for the three programs. 87 Fed. Reg. 40,406 (July 6, 2022). The new priorities, requirements, definitions, and selection criteria supplement, and do not supersede, policies established by the governing statute, 20 U.S.C. §§ 7221–7221j, applicable regulations,

and policies that the Department previously adopted for CMO Grants in 2018 and for Developer Grants in 2019. *See* 87 Fed. Reg. at 40,406.

For CMO Grants and Developer Grants, the July 2022 notice established two additional priorities: a priority for applications proposing to open, replicate, or expand charter schools using a community-centered approach, including an assessment of community assets, and a priority for collaborations between charter schools and traditional public schools or districts. *See id.* at 40,420. In accord with the Department's usual practice, the July 2022 notice did not specify precisely how these priorities will be implemented in future grant competitions, "to allow the Department flexibility to determine how the priority should be used in any future competition." *Id*. at 40,410. The Department typically announces which priorities will be implemented and how they will be implemented at the time of each new grant competition. At that time, it designates priorities as "absolute," "competitive preference," or "invitational." Each type of designation has a different effect within the grant competition. *See id.* at 40,420–21; 34 C.F.R. § 75.105(c).

The July 2022 notice established additional application requirements for the three programs, specifying information and documentation that applicants may be required to provide with each grant application. *See* 87 Fed. Reg. at 40,421–24. Among the new application requirements for CMO Grants and Developer Grants is a "needs analysis" discussing the need for the proposed project and how it would serve the interests and meet the needs of students and families in communities the charter school intends to serve. *See id.* at 40,421. For State Entity Grants, applicants will need to certify that they will require a similar needs analysis from each subgrant applicant. *See id.* at 40,422–23. For all three programs, the July 2022 notice did not make these new application requirements applicable to all future grant competitions. The Department will choose whether to implement the new application requirements at the time of

each new grant competition. *See id.* at 40,426 ("*Note:* This notice does *not* solicit applications. In any year in which we choose to use one or more of these priorities, requirements, definitions and selection criteria, we invite applications through a notice in the *Federal Register*.").

The July 2022 notice also made corresponding additions to the grant selection criteria for the three programs. Applications for CMO Grants and Developer Grants may be evaluated based in part on the quality of the needs analysis, including how well the needs analysis demonstrates "sufficient demand for the charter school." *Id.* The July 2022 notice did not determine precisely how the selection criteria will be implemented in future grant competitions. The Department typically announces which criteria will be implemented and how they will be implemented—for example, how different criteria will be weighted or scored—at the time of each new grant competition. *See* 34 C.F.R. § 75.201.

## III.  Background of this case

Plaintiffs Michigan Association of Public School Academies (MAPSA) and Thomas B. Fordham Institute (Fordham) filed the original complaint in this action on August 8, 2022. Compl., ECF No. 1. MAPSA and Fordham filed an amended complaint on November 4, 2022, along with three additional plaintiffs, Delaware Charter Schools Network (DCSN), West Virginia Professional Charter School Board (WVPCSB), and North Carolina Coalition for Charter Schools (NCCCS). First Am. Compl., ECF No. 17.

Plaintiff MAPSA is a membership association whose members include Michigan public charter schools, charter management organizations, charter school developers, and charter school "authorizers." *See* First Am. Compl. ¶¶ 1–2, PageID.98. A "charter management organization" is "a nonprofit organization that operates or manages a network of charter schools linked by centralized support, operations, and oversight." 20 U.S.C. § 7221i(3). A charter school "developer" is an individual or group that is seeking to operate a charter school. *Id.* § 7221i(5). A

charter school "authorizer" or "authorized public chartering agency" under 20 U.S.C. § 7221i(1) is "a State educational agency, local educational agency, or other public entity that has the authority pursuant to State law and approved by the Secretary to authorize or approve a charter school." *Id.*

Plaintiff Fordham is a research and advocacy organization and charter school authorizer in Ohio. *See* First Am. Compl. ¶¶ 5–9, 142, PageID.99, 121. Under Ohio law, authorizers are called "sponsors" and have authority to approve charter schools and monitor and provide technical assistance to schools to ensure that they comply with the terms of their charters. *See* First Am. Compl. ¶ 143, PageID.121.

Plaintiff DCSN is an advocacy organization in Delaware whose members include charter school developers. First Am. Compl. ¶¶ 10–13, PageID.99-100.

Plaintiff WVPCSB is a charter school authorizer in West Virginia. First Am. Compl. ¶¶ 14–15, 17–21, PageID.100-101.

Plaintiff NCCCS is an advocacy organization in North Carolina whose members are charter schools. First Am. Compl. ¶¶ 22–26, PageID.101-102.

The plaintiffs challenge the priorities, application requirements, and selection criteria adopted in the July 2022 notice under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706, asserting that the challenged rules are invalid because they exceed the Department's statutory authority, are arbitrary and capricious, were issued without a meaningful opportunity for public comment, or were not issued by a properly appointed officer of the United States. *See* First Am. Compl. ¶¶ 219–256, PageID.130-135. They seek declaratory and injunctive relief and vacatur of the rule. *See* First Am. Compl. 40–41, PageID.135-136.

# ARGUMENT

## I.      Standards applicable to a motion to dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court considers "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The court accepts the factual allegations as true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. This requires factual allegations "plausibly suggesting," and "not merely consistent with," a valid claim for relief. *Id.* at 557. These standards govern both the court's analysis of whether the complaint alleges facts sufficient to establish subject matter jurisdiction and its analysis of whether the complaint states a valid claim for relief. *See, e.g.*, *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 386, 387 (6th Cir. 2016) (explaining that, when the defendant presents a "facial attack" on subject matter jurisdiction, the court accepts the allegations of the complaint as true and considers whether those allegations are sufficient to establish jurisdiction); *Ass'n of Am. Physicians & Surgeons v. U.S. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021) (applying the pleading standards elucidated in *Iqbal* when considering whether the complaint was sufficient to establish subject matter jurisdiction).

**II.      The plaintiffs cannot establish standing because no plaintiff has alleged a concrete plan to apply for a grant in a competition in which the Department will apply the July 2022 rules.**

**A.      The jurisdictional requirement of standing**

A plaintiff seeking to invoke the jurisdiction of a federal court bears the burden of establishing that the court's exercise of jurisdiction is within the bounds of the Constitution and is authorized by statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). A court must resolve all issues of subject matter jurisdiction before it proceeds to the merits of the plaintiff's claims. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

The jurisdictional requirement of "standing" is rooted in the constitutional separation of powers. It prevents courts from taking action to address matters better suited to legislative or executive action. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). A plaintiff in federal court must show "such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). Standing entails three elements:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). A plaintiff asserting more than one claim must satisfy the requirements for standing with respect to each claim independently. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351–53 (2006).

**B.     Plaintiffs MAPSA, DCSN, and NCCCS cannot establish standing to sue on behalf of their members because none of them has identified a member that intends to apply for a CSP grant.**

The plaintiffs in this case cannot establish any "actual or imminent" injury from the July 2022 rules. None of the five plaintiffs alleges that it intends to ever apply for a CSP grant. Three of the plaintiffs, MAPSA, DCSN, and NCCCS, allege that some of their members may apply for CSP grants in the future, but those allegations do not establish a sufficient basis for standing, because the plaintiffs do not identify the particular members that intend to apply for grants.

A membership association can sometimes establish standing to sue on behalf of its members. *See, e.g.*, *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) ("[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). But to establish standing in this manner, the organization has to identify at least one member that has suffered a sufficiently concrete injury.

The Supreme Court considered circumstances similar to this case in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). In *Summers*, a membership organization sought to challenge Forest Service regulations that exempted certain types of projects from procedural requirements. The plaintiff organization asserted that the regulations threatened environmental harm that would hamper its members' recreational use of national forests. *See id.* at 494. The Supreme Court found that that assertion was not enough to establish standing, because the plaintiff organization had not identified a particular member of the organization who faced harm from a particular application of the regulations. *See id.* at 492–500. It was not enough for the organization to merely allege that it was "probable . . . that some (unidentified) members have

10

planned to visit some (unidentified) small parcels affected by the Forest Service's procedures." *Id.* at 497–98; *see also Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 257–58 (6th Cir. 2018) (holding that an association lacked standing to seek injunctive relief compelling new hearings because it failed to identify any member who had not received a hearing).

One identified member of the plaintiff organization in *Summers* did express a general desire to visit a particular area subject to the challenged regulations, but the Court found that was not enough to support standing. It explained that "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Summers*, 555 U.S. at 496.

Under *Summers*, the plaintiffs' allegations are insufficient to establish standing in this case. MAPSA alleges that "[s]ome of MAPSA's more than 250 charter school members, charter school developers, and charter management organizations intend to apply for grants under the federal CSP in future competition periods, and some intend to apply for developer or charter management organization grants in the 2024 application cycle." First Am. Compl. ¶ 129, PageID.119. But it does not identify any particular member that intends to apply for a grant, nor does it specify when that particular member intends to apply for a grant or under which program. Allegations about the general intentions of unnamed members are not sufficient to establish standing.

MAPSA alleges that some of its members have received CSP grants in the past, *see* First Am. Compl. ¶¶ 106–107, 112, PageID.117-118. But past grant applications under earlier rules do not support standing to challenge the July 2022 rules. In *Summers*, the plaintiffs similarly sought to establish standing based on evidence that one of the plaintiff's members "had suffered injury

in the past from development on Forest Service land." *Summers*, 555 U.S. at 495. The Court swiftly rejected that evidence as inadequate to establish standing "because it was not tied to application of the challenged regulations, because it [did] not identify any particular site, and because it relate[d] to past injury rather than imminent future injury that [was] sought to be enjoined." *Id.*

Plaintiff DCSN likewise does not allege sufficient facts to establish standing. DCSN states that "[s]ome of DCSN's members intend to apply for grants under the federal CSP in future competition periods," First Am. Compl. ¶ 173, PageID.125, but, again, statements about the general intentions of unnamed members are not sufficient to establish standing. DCSN states more specifically that one of its members is a Delaware charter school developer that intends to apply for a grant under the Developer Grants program "during the 2023 CSP competition period." First Am. Compl. ¶¶ 174–175, 177–181, PageID.125. But the plaintiffs do not name this DCSN member. *See Summers*, 555 U.S. at 498–99 (noting that a plaintiff seeking to establish standing based on injuries to its members must "name the individuals who were harmed," unless all the members of the organization have been harmed); *Tenn. Republican Party v. SEC*, 863 F.3d 507, 520 (6th Cir. 2017) (same); *Waskul*, 900 F.3d at 255 (noting that a plaintiff seeking to establish standing based on injuries to its members must identify "named members" that meet the requirements of standing). Furthermore, Developer Grants are available only in States where there are not active State Entity Grants, and there is currently an active State Entity Grant in Delaware. *See* 20 U.S.C. § 7221d(a)(2) (specifying that grants are available "in a State that did not receive a grant under section 7221b of this title"); Dep't of Educ., Awards [*hereinafter* State Entity Grant Awards], https://oese.ed.gov/offices/office-of-discretionary-grants-support-services /charter-school-programs/state-entities/awards/ (list of State Entity Grants awarded from 2017 to

2022, including an active grant awarded to the Delaware Department of Education in 2018).[1] As the plaintiffs acknowledge in their complaint, the unnamed DCSN member will not be able to apply for a Developer Grant in 2023 if Delaware receives another State Entity Grant. *See* First Am. Compl. ¶ 169, PageID.124. The prospect of injury to this unnamed DCSN member therefore is uncertain and cannot support standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." (second alteration in original)); *Trump v. New York*, 141 S. Ct. 530, 535–36 (2020) (holding that plaintiffs failed to establish standing to challenge a Presidential directive because it was not yet clear whether the directive would be implemented in a way that would pose concrete harm to the plaintiffs).

DCSN also alleges that its members have received CSP grants in the past, *see* First Am. Compl. ¶¶ 170–171, PageID.124, but, as discussed above, past grant applications under earlier rules do not support standing to challenge the July 2022 rules.

Plaintiff NCCCS similarly does not allege sufficient facts to establish standing. It states that "[m]any of NCCCS['s] member schools, developers, or charter management organizations will need to apply for grants under the CSP program, either through future state subgrants or through direct awards to either expand or replicate successful programs, during the 2023 and 2024 application cycles." First Am. Compl. ¶ 208, PageID.129. But it does not identify any particular member that intends to apply for a grant, when that particular member intends to apply

---

[1] The Court can consider the list of awards on the Department's Web site because it is subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (noting that a court evaluating a motion to dismiss may consider "matters of which a court may take judicial notice"); *Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) (noting that a court may take judicial notice of information on a government Web site).

for a grant, or under which program. And as with MAPSA and DCSN, past receipt of grants by NCCCS members, *see* First Am. Compl. ¶¶ 206–207, PageID.129, does not establish standing.

### C. The plaintiffs cannot establish standing based on their general interest in charter school advocacy or supposed injuries to persons other than themselves or their members.

The plaintiffs also cannot establish standing based on their general interest in charter school advocacy, or based on supposed injuries to persons other than their members.

The plaintiffs cannot establish standing based on their general interest and involvement in charter school advocacy. An organization's interest or expertise in the subject matter of a lawsuit is not enough to support standing. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 226 (1974) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient . . . ." (quoting *Sierra Club*, 405 U.S. at 739)).

The plaintiffs also cannot establish standing based on supposed injuries to persons other than their members. Plaintiffs Fordham and WVPCSB allege that they are charter school authorizers, which are entities authorized under State law to approve charter schools. *See* First Am. Compl. ¶¶ 9, 14–15, 17–21, 142–143, 151, PageID.99-101, 121-122; *see also* 20 U.S.C. § 7221i(1). They assert that the challenged rules will harm the charter schools that they have authorized. *See, e.g.*, First Am. Compl. ¶¶ 163–167, 201–202, PageID.123-124, 128. And plaintiffs MAPSA, DCSN, and NCCCS each claim to "represent" the interests of certain groups other than their members. *See* First Am. Compl. ¶¶ 1, 11, 22, 26, PageID.98-99, 101-102. But a plaintiff must identify an actual or imminent injury to itself or its members. An injury to another person cannot support standing. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) ("[T]he 'injury in fact' test . . . requires that the party seeking review be himself among the injured." (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972))); *Tileston v. Ullman*, 318

14

U.S. 44, 46 (1943) (per curiam) (holding that a physician lacked standing to challenge contraception regulations based on alleged injuries to his patients when he did not allege any injury to himself); *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) (holding that the plaintiffs lacked standing to sue as representatives of an employee benefit plan because they did not allege any personal injury to themselves); *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (noting that a plaintiff cannot establish standing to assert the interests of others if it does not allege some concrete injury to itself); *Fednav, Ltd. v. Chester*, 547 F.3d 607, 616 (6th Cir. 2008) (holding that an association could not establish standing based on supposed harm to customers of its members).

**D.      Analyzing the plaintiffs' claims separately with respect to each of the three grant programs makes it even clearer that the plaintiffs cannot establish standing.**

Analyzing the plaintiffs' standing separately with respect to each of the three grant programs makes it even clearer that none of the plaintiffs can establish standing to challenge any of the three programs.

"[W]hen a plaintiff has been injured by one part of a law, the plaintiff cannot invoke that injury to challenge other parts of the law that have done nothing to the plaintiff." *Davis v. Colerain Twp.*, 5 F.4th 164, 171 (6th Cir. 2022). In the context of this case, this means that the plaintiffs need to meet the requirements of standing separately for each of the three grant programs whose rules they are challenging: State Entity Grants, Developer Grants, and CMO Grants. *See Fednav, Ltd.*, 547 F.3d at 617–18 (holding that the plaintiffs were restricted to challenging the permit requirement that was the source of their alleged injury, and lacked standing to challenge other aspects of the same regulatory scheme).

The plaintiffs do not allege that either they or any of their members intend to apply for direct grants under the State Entity Grants program. Indeed, the Department awards State Entity

Grants only to four types of entities: State educational agencies, State charter school boards, State governors, and charter school support organizations. *See* 20 U.S.C. § 7221b(a). The plaintiffs' members would not be eligible for State Entity Grants. Some of the plaintiffs' members conceivably could apply for *subgrants* under the State Entity Grants program, but as discussed above, the plaintiffs have not named any member that has a concrete plan to apply for a subgrant under the State Entity Grants program. There also is no active State Entity Grant in either Ohio or West Virginia, the States of interest to Fordham and WVPCSB, so State Entity subgrants are not available in those States. *See* State Entity Grant Awards.

None of the plaintiffs could face any imminent injury from the rules for Developer Grants. Developer Grants are available only in States where there are not active State Entity Grants. *See* 20 U.S.C. § 7221d(a)(2) (specifying that grants are available "in a State that did not receive a grant under section 7221b of this title"). There are active State Entity Grants in Michigan, Delaware, and North Carolina, the States of interest to MAPSA, DCSN, and NCCCS, so Developer Grants are not available in those States. *See* State Entity Grant Awards (listing active grants awarded to the Michigan Department of Education, Delaware Department of Education, and North Carolina Department of Public Instruction in 2018). None of the five plaintiffs has identified a particular member that intends to apply for a Developer Grant. WVPCSB alleges that three charter schools that it supervises intend to apply for Developer Grants, *see* First Am. Compl. ¶¶ 193–199, PageID.127-128, but WVPCSB cannot establish standing based on supposed injuries to schools that it authorized. *See supra* pp. 14–15.

None of the plaintiffs could be injured by the rules for CMO Grants, because they are not eligible for grants under that program. CMO Grants are available only to charter management organizations, which are nonprofit organizations that operate networks of charter schools. *See* 20

U.S.C. § 7221i(3). MAPSA asserts that its membership includes charter management organizations, First Am. Compl. ¶¶ 2, 129, PageID.98, 119, but it does not identify any of these charter management organizations. None of the other plaintiffs claim to count charter management organizations among their members. NCCCS purports to "represent" some charter management organizations, First Am. Compl. ¶¶ 22, 26, PageID.101-102, but that does not support standing, because NCCCS does not name those charter management organizations and does not claim they are members of NCCCS. NCCCS claims that its members are charter schools. *See* First Am. Compl. ¶ 26, PageID.102 ("NCCCS also represents the charter management organizations that operate 42 of *the 72 public charter schools that are NCCCS members* . . . ." (emphasis added)).

### E. The plaintiffs cannot establish standing because it is uncertain how, or even whether, the Department will implement the challenged rules in particular future grant competitions.

A further reason why the plaintiffs cannot establish standing is that the July 2022 notice does not require the Department to implement the new priorities, application requirements, and selection criteria in any future grant competition. As discussed above, the Department will decide whether and how the new priorities, application requirements, and selection criteria will be implemented at the time of each new grant competition. *See supra pp.* 5–6; 87 Fed. Reg. at 40,426 ("*Note:* This notice does *not* solicit applications. In any year in which we choose to use one or more of these priorities, requirements, definitions and selection criteria, we invite applications through a notice in the *Federal Register*."); 34 C.F.R. §§ 75.105(b), .200(b)(3). And even when priorities and selection criteria are implemented in grant competitions, they may be implemented in a way that has no practical effect. For example, the Department may designate a priority as an "invitational" priority within a grant competition, which means that applications meeting the priority do not receive any preference over other applications. *See* 87 Fed. Reg. at

40,421; 34 CFR § 75.105(c)(1). Likewise, the Department has discretion to assign different weights or points to selection criteria in a particular grant competition. *See* 34 C.F.R. § 75.201(b)–(c). Thus, even if members of the plaintiff organizations were to apply for grants, they still might never be affected by the priorities, application requirements, and selection criteria adopted in the July 2022 rules. The possibility of injury associated with the rules is simply too speculative to satisfy the requirements of Article III. *See Clapper*, 568 U.S. at 409 ("'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." (second alteration in original)); *Trump v. New York*, 141 S. Ct. at 535–36 (holding that plaintiffs failed to establish standing to challenge a Presidential directive because it was not yet clear whether the directive would be implemented in a way that would pose concrete harm to the plaintiffs).

The Supreme Court made clear in *Summers* that a plaintiff cannot challenge agency rules "in the abstract[], apart from any concrete application that threatens imminent harm to [its] interests." 555 U.S. at 494. The plaintiffs thus may not challenge the Department's rules outside the context of a particular grant application that will be subject to the July 2022 rules. The Court should dismiss this action.

## CONCLUSION

Because none of the plaintiffs has alleged that it faces any "imminent and concrete" injury from the July 2022 rules, the complaint fails to meet the jurisdictional requirement of standing, and the Court should dismiss this action for lack of subject matter jurisdiction.

Date: November 16, 2022                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington DC 20530
Tel: (202) 514-4938
E-mail: James.Luh@usdoj.gov
Attorneys for Defendants