UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHIGAN ASSOCIATION OF PUBLIC SCHOOL ACADEMIES, *et al.*, Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | No. 1:22-cv-712 |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, Defendants. | ) ) ) ) ) | Honorable Paul L. Maloney |

### AMENDED ORDER RESOLVING MOTION TO DISMISS TO CORRECT SCRIVENER'S ERROR

The Michigan Association of Public School Academies ("MAPSA") and others brought this action against the United States Department of Education and others alleging several violations of the Administrative Procedure Act and a violation of the Appointments Clause of the United States Constitution. (ECF No. 17). Defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 19). As explained below, the Court will grant in part Defendants' motion to dismiss. Upon finding that some Plaintiffs lack standing, the Court will transfer the case to a more proper venue upon briefing from the remaining Parties on the issue.

### I. Background

This matter concerns the government's support of public charter schools. The federal Charter Schools Program ("CSP") helps promote public charter schools.[1] In 2015, Congress

---

[1] The Court entered an amended order to clarify its scrivener's error on page eleven at Parties' request.

1

expanded the program by way of the Opportunity Through Quality Charter Schools Act ("Act"). 20 U.S.C. § 7221 *et seq.* The Act allocated funding to promote charter schools nationwide, and its purpose was to "provide financial assistance for the planning, program design, and initial implementation of charter schools" to "increase the number of high-quality charter schools available to students across the United States." 20 U.S.C. §§ 7221(2), (3). The Act also directs the Secretary of Education to distribute funds. *See* 20 U.S.C. § 7221. Some of those funds are distributed via grants to state entities under the "selection criteria" outlined in 20 U.S.C. § 7221b(g)(1).

**A. The New Final Rule**

On March 10, 2022, Congress appropriated $440 million for the federal charter school program for 2023. On March 14, 2022, the Department of Education proposed a rule that, according to Plaintiffs, would "dramatically undermine[] the grant program." (ECF No. 17 at PID 108). Following the notice and comment period, Deputy Assistant Secretary Ryder issued the final priorities on behalf of the department of Education on July 5, 2022. It was titled "Final Priorities, Requirements, Definitions, and Selection Criteria—Expanding Opportunity Through Quality Charter Schools Program (CSP)—Grants to State Entities (State Entity Grants); Grants to Charter Management Organizations for the Replication and Expansion of High-Quality Charter Schools (CMO Grants); and Grants to Charter School Developers for the Opening of New Charter Schools and for the Replication and Expansion of High-Quality Charter Schools (Developer Grants)," hereinafter the ("Final Rule"). 87 Fed. Reg. at 40,406.

2

The Final Rule set forth "two priorities, three application requirements, and two selection criteria for CMO Grants and Developer Grants; six application requirements and one selection criterion for State Entity Grants; and several assurances, definitions, and selection criteria applicable to CSP State Entity Grants, CMO Grants, and Developer Grants." 87 Fed. Reg. at 40,406. The Final Rule changed the grant review process as contemplated under 20 U.S.C. § 7221b(g)(1).

## B. The Plaintiffs and Their Alleged Harms

There are five Plaintiffs. First, MAPSA is a nonprofit member association that represents approximately 250 public charter schools throughout Michigan. (ECF No. 17 at PID 98). Plaintiffs allege that the new Final Rule "will disadvantage some or all of MAPSA's members in competition for CSP funding." (*Id.* at PID 120). In particular, Plaintiffs maintain that the Final Rule will disadvantage charter schools in Michigan as they will be unlikely to meet the Final Rule's priorities related to community collaboration, the "quality of the needs analysis" requirements, and the "racially . . . diverse student body" as required by the Final Rule. *Id.*

Second, the Thomas B. Fordham Institute ("Fordham") is a nonprofit advocacy group for public charter schools. (ECF No. 17 at PID 99). Fordham is a charter school authorizer in Ohio and contracts with charter schools for their right to open under state law. Plaintiffs allege that "[o]ne or more of the schools Fordham has sponsored intends to apply for CSP funds in the 2023 grant competition period for either charter management organizations or developers." (ECF No. 17 at PID 122). Fordham alleges the schools it has authorized will struggle to meet the Final Rule's priorities related to community collaboration, the "quality

3

of the needs analysis" requirements, and the "racially . . . diverse student body" as required by the Final Rule. (ECF No. 17 at PID 124).

Third, the Delaware Charter Schools Network ("DCSN") is another nonprofit advocacy group and represents all of Delaware's 23 public charter schools and charter school developers. (ECF No. 17 at PID 99). Plaintiffs allege that "[s]ome of DCSN's members intend to apply for grants under the federal CSP in future competition periods" and "one DCSN member is a developer that seeks to expand its existing public charter school program in 2024." (ECF No. 17 at PID 125). Additionally, like MAPSA and Fordham, Plaintiffs allege DCSN's members will struggle to meet the Final Rule's priorities related to community collaboration, the "quality of the needs analysis" requirements, and the "racially . . . diverse student body" as required by the Final Rule. (ECF No. 17 at PID 126).

Fourth, the West Virginia Professional Charter School Board ("WVPCSB") is an independent, statewide charter school authorizer in West Virginia. (ECF No. 17 at PID 100). The WVPCSB is tasked with overseeing public charter schools in West Virginia and reviewing applications for new public charter schools. The West Virginia Academy ("WVA") is an operating public charter school in West Virginia, and it "notified WVPCSB that it plans to apply for CSP funds in the 2023 application cycle, likely seeking a developer grant." (ECF No. 17 at PID 127). Another developer, MBEF College & Career Academies, Inc. has applied with WVPCSB for permission to open a charter school, and its proposed charter has "committed to applying for CSP funds in the 2023 application cycle." (ECF No. 17 at PID 127). Similarly, BridgeValley Community & Technical College ("BridgeValley") is a developer that has applied with WVPCSB for permission to open a charter school, and

4

it also "plans to apply for CSP funds in the 2023 application cycle." (ECF No. 17 at PID 128). Like the other Plaintiffs, the schools overseen by WVPCSB will struggle to meet the Final Rule's priorities related to community collaboration and the "quality of the needs analysis" requirements as required by the Final Rule. (ECF No. 17 at PID 128).

Fifth, the North Carolina Coalition for Charter Schools ("NCCCS") is a nonprofit member organization that represents public charter schools. (ECF No. 17 at PID 101). Plaintiffs allege that "[m]any of NCCCS member schools, developers, or charter management organizations will need to apply for grants under the CSP program, either through future state subgrants or through direct awards to either expand or replicate successful programs, during the 2023 and 2024 application cycles." (ECF No. 17 at PID 129). NCCCS member schools will struggle to meet the Final Rule's priorities related to community collaboration, the "quality of the needs analysis" requirements, and the "racially . . . diverse student body" as required by the Final Rule. (ECF No. 17 at PID 130).

Taken as a whole, Plaintiffs allege two distinct injuries: (1) that each organization has members that will be disadvantaged in future grant cycles, and (2) members of each organization will be forced to incur compliance costs when they apply for future CSP grants.

## II. Legal Standard

To survive a motion to dismiss under 12(b)(1), a plaintiff must show Article III standing. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, F. App'x 18, 22–23 (6th Cir. 2020). At this stage when defendants make a facial attack on jurisdiction, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015). To

establish standing, a plaintiff must show (1) an actual or imminent injury in fact; (2) a causal connection between the injury and the defendant; and (3) that the injury is redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A "plaintiff must demonstrate standing for each claim he seeks to press" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

An injury within the meaning of Article III must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury must be real and not abstract. *Id.* A future injury must be "certainly impending." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 401 (2013).

### III. Analysis

Plaintiffs challenge the priorities, application requirements, and selection criteria adopted in the July 2022 notice under the Administrative Procedure Act ("APA"), asserting that the challenged rules are invalid through four claims. Plaintiffs argue the Final Rule exceeds the Department's statutory authority, is arbitrary and capricious, was issued without a meaningful opportunity for public comment, or was not issued by a properly appointed officer of the United States. (ECF No. 17 at PID 130–35). Defendants moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and argue Plaintiffs lack an actual or imminent injury. Defendants' overarching contention is that Plaintiffs cannot

6

establish standing because none of the Plaintiffs have alleged "a concrete plan to apply for a grant in a competition" in which the Department will apply the July 2022 rules. (ECF No. 20 at PID 153).

### A. MAPSA, DCSN, and NCCCS

Defendants' first argument concerns Plaintiffs MAPSA, DCSN, and NCCCS. Defendant asserts that because these Plaintiffs rely on associational standing, they must identify the particular members of their organizations that intend to apply for grants. Defendants maintain that Plaintiffs failed to name their harmed members, and therefore, the associations lack standing. Plaintiffs counter that Defendants' premise is erroneous and that organizations can sue on behalf of their members even if they do not identify their specific members. Plaintiffs also maintain the organizations themselves suffered procedural harm.

"It is common ground that . . . organizations can assert the standing of their members. *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009). "An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n.*, 432 U.S. 333, 343 (1977). Generally, an organizational plaintiff must identify the individuals who suffered the harm.[2] *See Summers*, 555 U.S. at 494–97; *Lujan*, 504 U.S. at 563 (holding

---

[2] Plaintiffs cite a few cases that predate *Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009) to argue it's inapposite. *See Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004); *Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin.*, 479 F. Supp. 3d 570, 581 n.8 (W.D. Mich. 2020). Plaintiffs also cite

7

that an organization lacked standing because it failed to "submit affidavits . . . showing, through specific facts . . . that one or more of [its] members would be directly affected" by the illegal activity). In *FW/PBS, Inc. v. City of Dallas*, the Court noted that the affidavit provided by the city to establish standing would be insufficient because "it fail[ed] to identify the individuals" who were harmed by the challenged program. 493 U.S. 215, 235 (1990); *accord Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 253 (6th Cir. 2018).

In *Summers v. Earth Island Institute*, several environmental organizations sought to prevent the United States Forest Service from enforcing regulations that exempt small fire-rehabilitation and timber-salvage projects from the notice, comment, and appeal process. 555 U.S. at 490. The Court dismissed the case for a lack of standing. *Id.* at 500. The environmental organizations "identified no other application of the invalidated regulations that threaten[ed] imminent and concrete harm to the interests of their members" aside from one member, Jim Bensman. *Id.* at 495. Bensman's affidavit consisted of a past injury from the development of Forest Service Land and his plans to visit several unnamed national forests in the future, which could have been sold for timber. *Id.* The Court rejected that Bensman had a concrete injury because he did not identify a particular site. *Id.* ("There may be a chance, but is hardly a likelihood, that Bensman's wanderings will bring him to a parcel about to be affected by a project unlawfully subject to the regulations."); *see also Lujan*, 504 U.S. at 563 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the

---

some dated, out-of-circuit precedent. *Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008); *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999). None are persuasive.

'actual or imminent' injury that our cases require."). The *Summers* Court also rejected the organization's procedural injury, the inability to file comments on some Forest Service Actions, because "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." 555 U.S. at 496.

An examination of Plaintiffs' complaint shows that MAPSA, DCSN, and NCCCS do not identify a member who suffered or will suffer an injury from the Final Rule. MAPSA alleges that the new Final Rule "will disadvantage some or all of MAPSA's members in competition for CSP funding." (ECF No. 17 at PID 120). Likewise, DCSN alleges "[s]ome of DCSN's members intend to apply for grants under the federal CSP in future competition periods" and "one DCSN member is a developer that seeks to expand its existing public charter school program in 2024." (ECF No. 17 at PID 125). As for NCCCS, "[m]any of NCCCS member schools, developers, or charter management organizations will need to apply for grants under the CSP program, either through future state subgrants or through direct awards to either expand or replicate successful programs, during the 2023 and 2024 application cycles." (ECF No. 17 at PID 129). The "requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498–99 (2009). Plaintiffs do not allege which members suffered an injury or that *all* members of MAPSA, DCSN, or NCCCS suffered or will suffer an injury. Plaintiffs failed to identify which of their members of these organizations suffered an injury or will suffer an injury in the future. Therefore, these organizations lack standing. Like the alleged procedural harm

9

in *Summers*, Plaintiffs alleged procedural harm is insufficient to provide standing for MAPSA, DCSN, and NCCCS. *See Summers*, 555 U.S. at 496.

### B. Transfer of Venue

Defendants' second argument concerns Plaintiffs Fordham and WVPCSB, which are both public charter school authorizers. Defendants assert that these Plaintiffs cannot establish standing based on their general interest in charter school advocacy and that they cannot assert an injury on behalf of the schools they have authorized. Plaintiffs counter that both Fordham's and WVPCSB's purposes align with the interest that this action seeks to protect. The Court need not engage in this analysis because MAPSA lacks standing, and the Western District of Michigan is no longer the venue best suited to adjudicate this matter.

Title 28 U.S.C. § 1404(a) governs motions to transfer. It provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). A district court may transfer a case under § 1404(a) *sua sponte*. *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1291 (6th Cir. 1989). When considering *sua sponte* transfer of venue, the court "should make that possibility known to the parties so that they may present their views about the desirability of possible transfer and the possible destination." 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3844; *see also Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006) (finding a district court erred when it failed to provide parties with an opportunity to brief the issue of transfer). The parties shall file briefs with the Court on which potential venues would best serve the interests of Fordham, WVPCSB, and the Defendants. The relevant factors include

10

convenience of parties, convenience of witnesses, and interests of justice. *Moore*, 446 F.3d at 647.

## IV. Conclusion

MAPSA, DCSN, and NCCCS lack standing to bring this action, and Defendants' motion to dismiss regarding these Plaintiffs is granted. The Court does not determine whether Fordham or WVPCSB have standing and will transfer the case to a different venue upon briefing from the Parties.

**IT IS ORDERED** that the Defendants' motion to dismiss (ECF No. 19) is **GRANTED** in part.

**IT IS FURTHER ORDERED** that the parties shall brief the issue of proper venue now that the Court has found that several Plaintiffs lack standing. The parties are to file briefs on the issue of proper venue with the Court by January 12, 2024.

**IT IS SO ORDERED.**

Date:  January 10, 2024                         /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge